IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**UNITED STATES OF AMERICA**

v.

**CARLOS JOSE TURICIOS VILLATORO**,

    Defendant.

Case No. 1:20-CR-196-3-AJT

### MOTION FOR DISCLOSURE OF EXCULPATORY EVIDENCE

Mr. Villatoro is charged in this case with two alleged MS-13-related VICAR assaults, on August 30, 2018, and September 20, 2018. His trial has been much delayed, in violation of his Speedy Trial rights.[1] It is currently set for June 1, 2022. He is preparing for trial.

Mr. Villatoro was recently indicted, on January 6, 2022, on separate alleged MS-13-related capital murder charges; the alleged conspiracies spanned from 2017 to 2020.[2] The government is still deciding whether it will seek to kill him.

The government has represented that it has completed discovery. *See* ECF #210. But it has not disclosed substantial evidence, in its possession, about Mr. Villatoro's alleged racketeering activity. For instance, it hasn't produced any evidence related to the murders—murders which, allegedly, Mr. Villatoro committed in furtherance of the same racketeering enterprise, within months of the VICAR assaults. This information is discoverable,[3] and trial is (once again) fast approaching.

---

[1] Though the Court found otherwise. *See* ECF #188.

[2] *See* 1:20-cr-260-6-LMB.

[3] *See, e.g.*, Fed. R. Crim. P. 16(a)(1)(E)(i) (providing that the government must produce items within its possession, custody, or control, which are "material to preparing the defense.").

In this motion, Mr. Villatoro asks for three things, as soon as possible:

1. That the government seek out and produce all evidence—inculpatory, exculpatory, and otherwise—of his alleged MS-13 racketeering activity.

2. That the government identify in its production *Brady* material of which it's aware.

3. That the government identify what evidence it intends to introduce at trial on June 1, 2022, to prove that Mr. Villatoro participated in a racketeering enterprise.

## Background

In October 2020, President Trump signed into law the Due Process Protections Act, in which Congress directed federal judges to more actively prevent and remedy prosecutorial *Brady* violations. The law was not meant to be a toothless incantation by judges at the outset of a case. Rather, judges should use it to encourage prosecutors to become more proficient in how they gather, manage, and handle discovery materials and to further hone best practices for meeting their *Brady* disclosure obligations in a timely manner. After all, "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Under the Fifth Amendment, the accused is guaranteed the right of due process. Withholding exculpatory evidence violates due process. *Brady*, 373 U.S. at 87. An impediment to the enforcement of an accused's constitutional due process rights is that he does not know what information is in the government's possession; he is completely reliant on the government's good faith in disclosing any information that might be helpful to the defense. As a consequence, historically, it was entirely up to the government to police itself to ensure that its constitutional discovery obligations are met. A prosecutor's failure to disclose such evidence is difficult to

uncover, despite its serious implications for an accused's rights and a trial's fairness.

These realities—coupled with the burgeoning era of massive amounts of electronic data—motivated Congress to pass the Due Process Protections Act. No longer does evidence fit within a redwell. In this world, we're learning, *Brady* obligations and norms must shift.

<u>Request #1—The Government Should Produce the Missing Discovery</u>

The alleged racketeering conspiracy in the murder case stretches from 2017 to 2020. The racketeering-related assaults in this case took place in 2018. The government has not produced to Mr. Villatoro any of the murder discovery, despite that case being charged in the Commonwealth of Virginia in October 2020. This discovery is relevant and material to preparing a defense to the instant charges and, it seems probable, exculpatory.[4] It should be produced without delay.

---

[4] The prosecution has a duty in criminal cases to disclose potentially exculpatory evidence. *Brady*, 373 U.S. at 87-88 ("A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice . . . ."). This duty is so powerful and far-reaching that it imposes on prosecutors "a duty to learn of any favorable evidence known to others acting on the government's behalf in this case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Moreover, U.S. Department of Justice policy "requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)." Justice Manual § 9-5.001. In particular, Department policy requires that "[a] prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime." *Id.* Moreover, "[a] prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence . . . the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence." *Id.* Finally, "th[is] disclosure requirement applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." *Id.*

Request #2—The Government Should Identify *Brady* Material in Its Production

As Mr. Villatoro has noted before, his case—as charged and prosecuted—is unique. It has become even more unique. While, as a general proposition, the government is not required to identify, to the extent it has isolated, *Brady* material—here, it is necessary.

The government has been investigating and prosecuting this case for years. A cadre of dozens of prosecutors, agents, investigators, and translators have been collecting and reviewing evidence for years. On June 1, 2022, they go up against a "singular, individual defendant, who is detained in jail pending trial, and who is represented by a relatively small defense team."[5] Indeed, Mr. Villatoro's defense team consisted of zero people until last September.[6] And he, in a foreign country, and without the benefit of speaking English.

The government has produced the discovery in an unorganized and burdensome way. There is no indexing. There is no database. There is no detailed production log. There is not complete metadata. The data is, in sum, jumbled. Mr. Villatoro is sifting through it, but it's slow going—and to the extent the government knows about *Brady* material therein, it should identify it.

And we know there is *Brady* material in this case. For instance, the government admitted to the existence of *Brady* evidence at the hearing on November 3, 2021, when the Court issued a

---

[5] Citing language from *United States v. Salyer*, No. CR-S-10-61, 2010 WL 3036444, at *7 (E.D. Cal. Aug. 2, 2010), in which the Court, under similar facts, directed the government to identify previously-disclosed *Brady*/*Giglio* material to the defendant where the government collected documentary information during a multi-year investigation and its electronic production was massive.

[6] *See* ECF #176 at 6.

continuance in part so the government could turn it over.[7]

The government, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to prove those charges, is in a far better position than Mr. Villatoro to know what evidence may be exculpatory and/or impeachment material. Other courts, including those in this Circuit, have ordered such relief in similar cases. *See, e.g.*,

- *United States v. Blankenship*, No. 5:14-cr-244, 2015 WL 3687864, at *6 (S.D. W.Va. June 12, 2015) ("The Court finds that the United States should specifically designate any known *Brady* material as such and disclose the same to defense counsel.");

- *United States v. Saffarinia*, 424 F. Supp. 3d 46, 82-91 (D.D.C. 2020) (ordering government to identify *Brady* material to the extent the government already knew of any such material based on its existing knowledge from its open-file production of records and documents);

- *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [the accused] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack. To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to [the accused].");

- *see also United States v. Cutting*, No. 14-cr-139, 2017 WL 132403, at *9 (N.D. Cal. Jan. 12, 2017) (holding that depending on the facts and circumstances of a case, "it [may be] appropriate to require the government to identify the *Brady* material in the discovery that has been produced");

- *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("In certain circumstances and acting under their discretionary authority to manage the cases before them, some courts have required prosecutors to identify *Brady* material contained in a previously disclosed but 'voluminous' production of documents and data.");

- *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery

---

[7] Moreover, Minor 2 has changed her story many times and has confessed to herself being a murderer.

materials.");

- *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided . . . .").

Request #3—The Government Should Identify Its Racketeering Evidence

The government should identify what evidence it intends to introduce at trial on June 1, 2022, to prove that Mr. Villatoro participated in a racketeering enterprise. The government should direct counsel to the relevant portions of the extensive discovery it has provided. This relief is required due to (1) the government's massive and overbroad production[8], (2) the unorganized and burdensome nature of the production; (3) the government's refusal to conduct a reverse proffer so Mr. Villatoro can understand its case; and (4) the impeding trial schedule. The government's massive data dump does not confirm to *Brady*'s requirements. Instead, it must identify the material it intends to rely upon. The racketeering evidence, whatever it is, is critical to formulating Mr. Villatoro's defense.

COVID

In addition to the concerns raised by the Due Process Protections Act, the *Brady* implications of document dumps, and the exacerbating particulars of this case, there is an additional consideration that renders Mr. Villatoro's requests reasonable: COVID. It is more difficult than ever to visit Mr. Villatoro in prison and go over discovery. And a protective order

---

[8] As noted in previous filings, one of the problems with this case is that Mr. Villatoro, unlike the other 10 defendants, is not charged with the sex trafficking conspiracy. Most of the discovery relates to that. Yet, the government has made no effort to isolate the evidence against Mr. Villatoro for his review; instead, he's forced to wade through large amounts of irrelevant data.

6

disallows counsel from leaving it with him. If the government would identify what it already knows, the cause of justice would be greatly advanced.

## Conclusion

The stakes in the government's prosecution of Mr. Villatoro could not be higher. Based on the outcome, it could end his life. This motion matters.

As Congress signaled in passing the Due Process Protections Act, courts have a role to play in ensuring the *Brady* rights of the accused, particularly here. Mr. Villatoro asks this Court for help securing his rights, so that trial on June 1, 2022, is as fair as possible.

The government has, in its possession, all the evidence against Mr. Villatoro. But it hasn't disclosed it to Mr. Villatoro—so he is flying blind. Moreover, the facts and circumstances of this case require the government to specifically identify, within its production set, *Brady* material of which it's aware and the racketeering evidence upon which it will rely.

\#

Thus, Mr. Villatoro's motion should be granted, and the government should (1) seek out and produce any and all evidence related to his alleged association and/or membership in MS-13, an alleged enterprise engaged in racketeering activity; (2) identify in its production *Brady* material it has come across; and (3) identify what evidence it intends to introduce at trial on June 1, 2022, to prove that Mr. Villatoro participated in a racketeering enterprise.

Thank you,

CARLOS JOSE TURICIOS VILLATORO
By Counsel

By:

/s/ *[signature]*
Elizabeth L. Van Pelt
*Virginia Bar No. 82750*
*Delaware Bar No. 6117*
*District of Columbia Bar No. 1615865*
libbey@libbeyvanpeltlaw.com
LIBBEY VAN PELT LAW, PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
(571) 356-9066

8

**CERTIFICATE OF SERVICE**

      I certify that on January 29, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends a notification of filing (NEF) to all counsel of record.

                                                 /s/ *[signature]*
                                              Elizabeth L. Van Pelt